ALEKSANDR MAKSIMOV,　　　　　)
　　　　　　　　　　　　　　　)
　　　　Movant,　　　　　　　)
　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　)　　No. 4:03-CV-615 CEJ
　　　　　　　　　　　　　　　)
UNITED STATES OF AMERICA,　　)
　　　　　　　　　　　　　　　)
　　　　Respondent.　　　　　)

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of Aleksandr Maksimov to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 and his motion to vacate judgment and for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. The United States has responded to both motions, and has filed a motion to transfer the Rule 33 motion to the underlying criminal case.

## I.　Background

Following a jury trial, Maksimov was convicted of three counts of mail fraud, two counts of bank fraud, and one count of money laundering in violation of, respectively, 18 U.S.C. § 1341, 18 U.S.C. § 1344, and 18 U.S.C. § 1956(a)(1)(A)(I). He was sentenced to 60 months in prison on each count to be served concurrently, together with concurrent terms of supervised release of three and five years. He was also ordered to pay restitution in the amount of $52,312.28 and special assessments totaling $400.00. The conviction and sentence were affirmed on appeal. <u>United States v.</u>

<u>Maksimov</u>, 39 Fed.Appx. 462 (8th Cir. 2002) (unpublished opinion).

The charges against Maksimov resulted from a scheme in which Maksimov purchased and insured four automobiles in the United States, obtained bank financing for the purchase of three of those vehicles, shipped the vehicles to Europe for resale, subsequently reported that all four of the vehicles were stolen in the United States and attempted to recover on the insurance policies covering the vehicles.

On May 25, 2000, Maksimov was indicted and charged with seven counts of mail fraud, two counts of bank fraud, and one count of money laundering.  On January 29, 2001, Maksimov was arrested in the Eastern District of Washington and was subsequently removed to the Eastern District of Missouri.  Shortly before the trial began, the government filed and was granted a motion to dismiss four of the mail fraud counts.  As a result, some of the remaining counts were renumbered.  Counts 1 and 2 (mail fraud) remained the same; Count 4 (mail fraud) was renumbered as Count 3; Count 5 (money laundering) was renumbered as Count 4; Count 6 (bank fraud) was renumbered as Count 5; and Count 8 (bank fraud) was renumbered as Count 6.

Maksimov's trial began on May 14, 2001.  On May 18, 2001, the jury found Maksimov guilty on all six counts.

## II.  <u>Motion to Vacate Under 28 U.S.C. § 2255</u>

As grounds for relief in his § 2255 motion, Maksimov asserts

that his trial attorney's performance was deficient in a variety of respects such that he was denied effective assistance of counsel, in violation of the Sixth Amendment. Maksimov asserts the following twenty-two grounds for relief:

1.  Denial of effective assistance of counsel during pre-trial preparation resulting from his attorney's

    (a) failure to interview the defendant and familiarize herself with the facts of the case;

    (b) failure to familiarize herself with the offenses charged in the indictment;

    (c) failure to examine documents and uncover exonerating evidence during discovery;

    (d) failure to file a motion to dismiss the indictment for delayed prosecution;

    (e) failure to secure an interpreter;

    (f) failure to investigate the facts of the case and locate and secure witnesses;

    (g) deception to the defendant;

    (h) failure to appear at the first proffer meeting.

2.  Denial of effective assistance of counsel during trial resulting from his attorney's

    (a) failure to allow defendant to testify at trial;

    (b) failure to impeach a government witness and failure to object to prosecutional misconduct;

    (c) failure to object to the jury instructions and move for a mistrial upon defendant being found guilty on the wrong count;

    (d) failure to argue legal impossibility for the defendant to commit bank fraud;

(e) failure to file a motion for a post verdict judgment of acquittal;

(f) failure to object to the use of evidence obtained from the defendant's proffer;

(g) failure to object to the Customs database search.

3. Denial of effective assistance of counsel during sentencing resulting from his attorney's

(a) failure to object to the fact that the money laundering count and fraud counts were not grouped together;

(b) failure to object to the application of the two level increase for organizer or leader to the money laundering count;

(c) failure to object to identification evidence at sentencing;

(d) failure to bring newly discovered evidence to sentencing and for not moving for a new trial.

4. Denial of effective assistance of counsel on direct appeal resulting from his attorney's

(a) failure to argue the issues which the defendant wanted to argue on appeal;

(b) failure to argue that the District Court's refusal to provide defendant with new counsel was erroneous;

(c) failure to file a reply brief for direct appeal.

### A. __Legal Standard__

To prevail on a claim of ineffective assistance counsel, a movant must show (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that movant was

prejudiced thereby.  <u>Strickland v. Washington</u>, 466 U.S. 668, 667 (1984).  Thus, the movant must show that his attorney's errors were so serious that they deprived him of his Sixth Amendment right to counsel and denied him the right to a fair trial.  <u>Id</u>.

Judicial scrutiny of counsel's performance is highly deferential, and the movant must overcome the strong presumption that the challenged actions fall within the broad range of reasonably effective assistance and sound trial strategy.  <u>Id</u>. at 689; <u>Garrett v. United States</u>, 78 F.3d 1296, 1301 (8th Cir. 1996)(counsel's challenged conduct is "to be evaluated in the light of the circumstances surrounding the decision, not with the 20/20 vision of hindsight").  In deciding a claim of ineffective assistance, the court must examine the specific "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and then "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  <u>Id</u>. at 690-91.

Even if the movant is able to demonstrate particular errors of counsel that were unreasonable, the movant must also demonstrate that those errors actually had an adverse effect on the results of the proceedings.  <u>Id</u>. at 693.  In order to establish prejudice, the movant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." Id. at 694.

**B.   Grounds for Relief**

### 1. Ineffective Assistance Before Trial

#### (a)   Failure to interview the defendant and become familiar with the facts of the case

Maksimov alleges that his trial counsel was ineffective in that she failed to interview him and did not familiarize herself with the facts of his case.[1]  In an affidavit, defense counsel states that she was throughly familiar with the facts of the case and had discussed the facts with Maksimov on numerous occasions before, during and after trial. (Good Affidavit, ¶4). Counsel states that she organized the case in a variety of ways, such as by count, date, vehicle and witness, in an attempt to determine the most effective manner of presentation at trial. (Good Affidavit, ¶4). Additionally, counsel explains in her affidavit the relevant legal issues and discussed trial strategy with Maksimov prior to the commencement of trial.

Here, counsel's preparation, organization and communication of the relevant issues of law and fact with Maksimov demonstrates that she reasonably familiarized herself with the facts of the case and exercised the requisite degree of skill and diligence of an ordinary competent attorney.

---

[1]During the pretrial and trial proceedings, Maksimov was represented by Janis Good, an Assistant Federal Public Defender.

## **(b) Failure to familiarize herself with the offenses charged in the indictment**

Maskimov alleges that trial counsel was ineffective for failing to familiarize herself with the charges in the indictment. Specifically, Maksimov contends that counsel was ineffective for being unaware that State Farm Automobile Insurance Company, the issuer of the two checks described in Count 2, had not mailed the insurance checks to Maksimov, but that Maksimov had instead personally picked up the insurance checks from the company's claims office in Festus, Missouri. By personally picking up the check from the State Farm office, Maksimov could not have committed the crime of mail fraud.

A defense attorney does not render ineffective assistance by failing to raise claims where her client has neglected to supply essential underlying facts. <u>Dooley v. Petsock</u>, 816 F.2d 885, 890-91 (3d Cir. 1987). In <u>Beeman v. Iowa</u>, 108 F.3d 181, 184 (8th Cir. 1997), the Eighth Circuit held that an attorney was not ineffective for filing a late motion to suppress a confession because the defendant failed to inform his trial counsel of the facts which supported the motion until after the time for filing had expired. The court reasoned that the lateness of the motion was not counsel's fault and that counsel acted reasonably by filing a motion to suppress as soon as he learned of the defendant's allegations. <u>Id</u>. Therefore, counsel was not ineffective. <u>Id</u>.

Both the affidavit and the motion reflect that the first time

Maksimov told counsel that he had personally picked up the checks from the State Farm office was during the testimony of State Farm representative Frank King.[2] (Good Affidavit, ¶5; Maksimov Motion, p.1). Maskimov's trial began on May 14, 2001, more than two months after his arraignment and receipt of the indictment. Thus, he had ample time to inform counsel before the trial that he had personally picked up the insurance checks and that the government would thus be unable to meet its burden of proof on a key element of the mail fraud charge. The transcript shows that Maksimov's counsel vigorously cross-examined King about the mailing of the checks as soon as she learned of Maksimov's allegations.[3] Therefore, under these circumstances, counsel's performance was reasonable and

---

[2]Testimony of Frank King:
A: This is a check to Mr. Maksimov for $1,879.42 for the balance of what was due from what we considered the fair market value of the vehicle.

. . .

Q: And did you prepared that check?
A: I did.
Q: How was this check delivered to Mr. Maksimov?
A: I mailed it to his home address.
Q: What was his home address?
A: 2084 Antire Road, High Ridge, Missouri.
Q: Did you follow the same proceedings you that [sic] described earlier in --
A: Yes. Just put it in our out bin, and the secretaries pick up the mail at the end of the day and mail it out to the post office -- U.S. Post Office.

(TR. at 230-37).

[3]King testified that he mailed the checks on June 6, 1995, but defense counsel pointed out that an entry in the State Farm records showed that the vehicle keys were obtained from the insured on June 9, 1995. Counsel attempted to show that it was likely that the keys and the checks were exchanged at the same time. Nevertheless, the government presented evidence that the checks were deposited in Maksimov's corporate account on June 7, 1995.

effective.

Additionally, Maksimov failed to provide his counsel with any evidence, other than his own statement, to contradict the testimony of King that the checks were in fact mailed to his Missouri address. Maksimov has not shown that King testified falsely or that counsel's attempt to impeach King was deficient.

Maksimov also argues that counsel did not understand the nature of the money laundering and bank fraud charges in the indictment. In her affidavit, counsel states that she explained both charges to Maksimov and the factual basis for each charge. Her explanation was consistent with the government's theory and proof at trial. Additionally, counsel informed Maksimov of additional charges that could have been brought, based on documents she obtained from the government through discovery. The Court finds nothing in the record indicating that defense counsel did not understand the charges or that she was unaware of the evidence supporting them. Movant has not shown that he suffered any prejudiced.

### (c) Failure to examine and uncover exonerating evidence during discovery

Maksimov alleges that his counsel was ineffective for failing to discover the allegedly false grand jury testimony of U.S. Customs Service Special Agent David Siebenberger about the use of the mail by State Farm to deliver two insurance checks to Maksimov's home. Maksimov also alleges that documents from State Farm and Mercantile Bank of Jefferson County contained evidence that would have

established his innocence of the mail fraud and money laundering charges. However, Maksimov offers no specific exculpatory evidence in the grand jury transcript or the insurance or bank documents to support his claim.

Agent Siebenberger's grand jury testimony was consistent with State Farm agent King's trial testimony that the insurance checks were mailed to Maksimov. Thus, there was nothing in the grand jury transcript that counsel could have uncovered to prove that Agent Siebenberger's testimony was untruthful at trial. Additionally, Agent Siebenberger's testimony was supported by both bank and insurance records which were admitted into evidence and which provided proof that the checks had been mailed.

The two checks were each dated June 6, 1995. Although Maksimov dated his deposit ticket June 6, 1995, the statement from Mercantile Bank of Jefferson County and the reverse side of the deposit ticket and of the checks reflect that the checks were deposited to Maksimov's corporate bank account on June 7, 1995. Similarly, the State Farm activity log, detailing the handling of Maksimov's insurance claim that ultimately resulted in the issuance of the two checks, provides no indication that Maksimov had personally picked up the checks from the State Farm office in Festus, Missouri.[4]

---

[4]The State Farm activity log relating to Maksimov's claim contains the following entry for June 6, 1995: "Spoke to insd [sic] regarding loss. Still no recovery on vehicle. *Will* settle w/insd [sic]." (emphasis added). The activity log for June 9, 1995 states the following: "Insd [sic] vehicle still has not been recovered. Settled loss with insd [sic] on 6-6-95. Paid off lienholder, pending receipt of title from bank. Cal 30. Also collected both pairs of car keys from insd [sic]."

Therefore, counsel was not ineffective for failing to uncover exculpatory evidence because nothing in Special Agent Siebenberger's grand jury testimony and nothing in the bank or insurance records could have been used at trial to impeach King's testimony that the State Farm checks had been mailed.

### (d) Failure to file a motion to dismiss the indictment for delayed prosecution

Maksimov acknowledges that each charge in the indictment was brought within the applicable time period. However, he asserts that counsel should have filed a motion to dismiss the indictment on the ground of pretrial delay because the period of time between the dates of his crimes and his arrest in 2001 hampered his defense by preventing him from obtaining witnesses and evidence that would have exonerated him on each count.

To succeed on a claim of ineffective assistance based on counsel's failure to file a motion to dismiss, the movant must show that there was a reasonable probability that such a motion would have been successful. DeRoo v. United States, 223 F.3d 919, 925-26 (8th Cir. 2000) (stating that counsel's failure to file a motion to dismiss in no way prejudiced the defendant because there was no reasonably probability that the motion would have been successful). Pre-indictment delay may warrant "dismissal of an indictment where the delay is unreasonable and the defendant is actually and substantively prejudiced in the presentation of [his] case." United States v. Brockman, 183 F.3d 891, 895 (8th Cir. 1999). The

defendant bears the burden of proving actual and substantial prejudice attributable to pre-indictment delay. Id. To meet this burden, a defendant cannot rely on "speculative or conclusory claims of possible prejudice" resulting from the passage of time. Id. Thus, the defendant must (1) specifically identify witnesses or documents lost due to delay caused by the government, (2) relate the substance of this missing evidence in sufficient detail to permit a court to determine whether the information is material to the accused's defense, and (3) show that the lost testimony or information is not available through another source. Id. (citing United States v. Bartlett, 794 F.2d 1285, 1289-90 (8th Cir. 1986)).

Maksimov alleges that he was unable to preserve evidence from "numerous witnesses" due to pre-indictment delay. However, he does not identify these witnesses, nor does he show that they would have given testimony helpful to his defense or that the evidence they could have provided was not available through another source.[5] Additionally, Maksimov alleges that he lost access to "a number of shipping documents" in Russia and Europe due to the government's pre-indictment delay. Again, he has failed to specifically identify the types of documents that were lost due to delay, demonstrate how the substance of these documents would relate to his defense, and show that the information in the documents was not available through

---

[5]In a separate ground for relief (discussed *infra),* Maksimov identifies six witnesses whom he claims his attorney could have secured to testify at trial. The witnesses he identifies as available could not be the same witnesses he claims were lost due to pre-indictment delay.

another source.  Maksimov has therefore failed to prove any "actual and substantial prejudice" attributable to pre-indictment delay warranting dismissal of the indictment under the Fifth Amendment. Cf. Brockman, 183 F.3d at 895 (holding that a defendant failed to prove prejudice resulting from a five-year pre-indictment delay even though four witnesses had died, because the same testimony was available through other witnesses).  Thus, Maskimov's counsel was not ineffective for failing to file a motion to dismiss for pre-indictment delay because there is no reasonable probability that such a motion would have been successful.

### (e) Failure to secure an interpreter

Maksimov alleges that his counsel was ineffective for failing to request appointment of an interpreter.  During the trial, Maksimov filed a *pro se* motion for an interpreter that was denied by the Court because the record indicated that Maskimov had lived in the United States for at least 10 years, that he was a naturalized United States citizen, and that he spoke fluent English. Additionally, the Court found that Maksimov had operated his own business and had participated in several court proceedings without expressing any difficulty in understanding the English language.

A district court has wide discretion in determining whether an interpreter is needed.  Luna v. Black, 772 F.2d 448, 451 (8th Cir. 1985); United States v. Coronel-Quintana, 752 F.2d 1284, 1291 (8th Cir.), cert. denied, 474 U.S. 819 (1985).  A trial court is afforded

-13-

wide discretion because the decision to appoint an interpreter will likely hinge upon a variety of factors, including the defendant's understanding of English language, and the complexity of the proceedings, issues and testimony. <u>United States v. Khehra</u>, 396 F.3d 1027, 1030 (8th Cir. 2005)(upholding a trial court's determination that an interpreter was not required for a defendant because the defendant owned and operated a store for years, spoke to customers and suppliers in English, had no problem conversing with his defense counsel, tapes demonstrated his ability to successfully communicate at trial, and the proceedings were not complex).

Maksimov has failed to present any evidence that establishes a basis for believing that a motion for an interpreter made by counsel would have been successful. An attorney is not ineffective for failing to raise a meritless claim. <u>Dyer v. United States</u>, 23 F.3d 1424, 1426 (8th Cir. 1994) ("Dyer's claims of ineffective assistance of counsel fail because we have just rejected as meritless the claim Dyer asserts counsel should have pursued"). Additionally, the defendant suffered no prejudice due to counsel's failure to move for an interpreter because the record supports the finding that Maksimov spoke and understood English.

### (f) Failure to investigate the facts of the case and locate and secure witnesses

Maksimov alleges that his counsel failed to investigate the facts of the case and failed to locate and secure witnesses.

Maksimov contends that the vehicles listed in the indictment were shipped to Russia, shipped back to the United States, and ultimately stolen in the United States. Although these facts are the basis of the defendant's present claim, defendant was unable to direct counsel to any admissible evidence to support this claim.

In her affidavit, counsel states that she investigated the facts of the case to the best of her ability and that she received some Russian documents purporting to show that the vehicles were shipped from Russia to the United States. (Good Affidavit, ¶8). However, the Russian documents could not be authenticated because they were not originals, they were from an unknown source and, they were void of any identifying information. (Good Affidavit, ¶8). Counsel also questioned the reliability of the documents because no corresponding Customs Department database records corroborated the return of the vehicles from Russia to the United States and because a Customs database search reflected that neither Maksimov nor his corporation, AIM International Inc., had imported the vehicles in question into the United States. (Good Affidavit, ¶8). The Court finds that counsel took reasonable investigative measures in light of the defendant's failure to direct her to any admissible evidence to support his claim that the vehicles had been returned to the United States.

Maksimov next contends that his counsel failed to contact witnesses that were necessary for his defense. To establish that

counsel's assistance was ineffective or prejudicial for a failure to investigate potential witnesses, the defendant must show that the witnesses were available, how the witnesses would have testified and that such testimony would have probably changed the outcome of the trial. Saunders v. United States, 236 F.3d 950, 953 (8th Cir. 2001) (citing Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998)).

Here, Maksimov has failed to demonstrate how the result of his trial would have been different if any of the six potential witnesses identifies in his motion would have testified, or if any of them was actually available for trial. Maksimov identifies as a potential witness an individual named Andrey Shamilov, who was a purchaser of one of the vehicles involved in the charges. However, Maksimov does not articulate the information that Shamilov would have provided or the means by which counsel could have contacted him before the trial. Counsel states that she was first able to contact Shamilov two months after the trial. By that time, the Court had ruled that Shamilov and Maksimov were co-conspirators for the purpose of admitting Shamilov's hearsay statements into evidence. Even if counsel had located Shamilov prior to trial, it would be reasonable to assume that he would have exercised his Fifth Amendment right against self-incrimination and refused to testify.

Maksimov also names two potential witnesses, Igor Meshgov and Sergei Krylov, whom he claims witnessed the theft of two of the

vehicles in question. However, as Maksimov failed to provide counsel with any information as to how to locate either witness, counsel can not be faulted for failing to contact them.

Maksimov contends that his counsel should have located and secured a fourth witness, Vilena Poluyanova, who would have testified that she saw one of the vehicles listed in the indictment on the day of its theft in Sauget, Illinois. Counsel's affidavit shows that despite repeated attempts, she was unable to contact Poluyanova until after the trial. Poluyanova told counsel that she had never seen the vehicle that Maksimov claimed had been stolen in Sauget, Illinois. Movant has not established prejudice due to counsel's failure to contact this witness prior to trial because the testimony would not have been helpful to him.

Counsel was able to speak with Maksimov's fifth potential witness, Alexander Nedochivine, before trial. Although Nedochivine told counsel that he had transported several vehicles in Russia, he also stated that he had never sent them back to the United States, contrary to Maksimov's allegations. Nedochivine indicated that Maksimov's sixth potential witness, Alexey Goriunov, might have more information about shipping vehicles to the United States, but neither Nedochivine nor Maksimov provided counsel with any contact information and counsel was unable to locate Goriunov in Russia. Therefore, Maksimov cannot claim any prejudice resulting from the absence of Nedochivine and Goriunov at trial because Nedochivine's

testimony would not have changed the outcome of the trial and Maksimov failed to show that Goriunov was available or provide his counsel with the means to locate the witness.

### (g) Deception by counsel

Maksimov alleges that counsel falsely promised that she would respond to the government's allegations that he was a flight risk and should therefore be detained. The record shows that the Government presented evidence at the detention hearing supporting the magistrate judge's conclusion that Maksimov was a flight risk. Specifically, the magistrate judge found that Maksimov had used two Social Security numbers, that he made a false statement about the timing of his last visit to Russia, that his home was titled in his wife's name (which according to the magistrate judge was a common way to launder criminal proceeds), and that there was no evidence of a legal source of income that could support the purchase of his home. Maksimov has not shown that counsel could have presented evidence that would have led the magistrate judge to a different conclusion.

Maksimov also claims that counsel deceived him about the means she had used to contact witnesses. As discussed above, counsel made diligent efforts to contact potential defense witnesses. Her efforts were either unsuccessful or yielded unhelpful information. In any event, Maksimov fails to establish prejudice because he cannot demonstrate how the alleged deceptive acts of counsel had an

adverse effect on the results of his trial or how the results of the trial would have been different.

### (h) Failure to attend first proffer meeting

Maksimov alleges that his counsel was ineffective for failing to appear at his first proffer meeting with the government. Because trial counsel was unable to attend the proffer meeting due to a scheduling conflict, she arranged to have another attorney from her office, Rodney Holmes, represent Maksimov at this meeting. Specifically, Maksimov contends that his trial counsel's absence at the proffer meeting and Holmes' ineffectiveness in failing to conveying to trial counsel what transpired at the meeting prejudiced his defense.

Before Maksimov made any statement at the April 5, 2001, proffer meeting, Holmes explained the government's proposed proffer agreement to Maksimov, and informed Maksimov that his participation in the proffer was voluntary, that no truthful statements Maksimov made could be directly used against him and that Maksimov had the right to stop the meeting at any time if he so desired. Thereafter, Maksimov agreed to participate in the proffer and signed the agreement. (Holmes Affidavit, ¶4), (Def. Traverse, 24 at ¶4).

Following the first proffer meeting, Maksimov, Holmes, and trial counsel met to discuss the what had transpired, the fact that no truthful statements that Maksimov had made could be used against him at trial and that it was his decision on whether or not to

continue to speak to the government. (Good Affidavit,¶ 18), (Holmes Affidavit,¶ 7). Thus, by meeting with both Maksimov and Holmes following the first proffer meeting, trial counsel made an appropriate inquiry to obtain all of the information that Maksimov had provided the government during the meeting. Having Maksimov and Holmes both present allowed either to provide information that the other may have omitted. Therefore, counsel's performance was reasonable because she made a reasonable attempt to obtain all the information that Maksimov had provided to the government at the proffer meeting by meeting with both Maksimov and Holmes following the meeting.

Additionally, Maksimov fails to establish a "reasonably probability" that, but for his counsel's absence at the first proffer meeting, the result of his criminal trial would have been different. <u>Strickland</u>, 466 U.S. at 694. Therefore, Maksimov has failed to demonstrate prejudice.

### 2. Ineffective Assistance During Trial

#### (a) Failure to allow defendant to testify at trial

Maksimov alleges that his counsel was ineffective for failing to allow him to testify at trial. Courts must afford trial counsel wide discretion in strategic trial decisions when made after thorough investigation of law and facts. <u>Strickland v. Washington</u>, 466 U.S. 668, 690 (1984). The decision of a defense attorney to advise a client not to testify at trial is reasonable when

inculpatory evidence would have been elicited on cross examination or when the prosecution may be able to impeach the defendant's testimony. <u>Sumlin v. United States</u>, 46 F.3d 48, 49 (8th Cir. 1995) (holding that defense counsel's decision not to call the defendant as a witness to prevent the government from cross examining the defendant regarding an earlier drug conviction was clearly within the limits of reasonable trial strategy); <u>see</u> <u>El-Tabech v. Hopkins</u>, 997 F.2d 386, 390 (8th Cir. 1993) (stating that a defense attorney's decision not to call the defendant as a witness was sound trial strategy based on the circumstances of the case because the attorney was concerned that the jury would not belief the defendant, that the defendant had a tendency to fly into rages on cross-examination creating a bad impression for the jury and that unfavorable information, which had been the subject of a motion in limine, would be elicited on cross-examination).

According to counsel's affidavit, Maksimov had made incriminating statements during his proffer meeting which could have been used to impeach his testimony at trial. (Good Affidavit, ¶20). Additionally, counsel expressed concerned that other unfavorable and possibly incriminating information, that was otherwise inadmissible, would be elicited from Maksimov on cross-examination. (Good Affidavit, ¶20). Counsel also warned Maksimov that his sentence could be adversely affected by the sentencing guideline for obstruction of justice if he were found to have testified falsely.

Therefore, based on the circumstances of the case, counsel's advice to Maksimov not to testify and her decision not to call Maksimov to the stand was a reasonable strategic decision made after thorough investigation of law and facts. Therefore, Maksimov has failed to establish either deficient performance or prejudice to his defense.

### (b) Failure to impeach a government witness and failure to object to prosecutorial misconduct

Maksimov alleges that his counsel was ineffective for failing to impeach State Farm agent King's testimony regarding the fact that he had mailed the two insurance checks to Maksimov. To determine whether an alleged act or omission of counsel is outside the wide range of professionally competent assistance or is the result of reasonable professional judgment, a court must consider the circumstances of each particular case. <u>Strickland v. Washington</u>, 466 U.S. 668, 690 (1984).

Here, Maksimov fails to articulate any evidence that counsel could have used to refute agent King's testimony on cross-examination. As discussed above, the documentary evidence from State Farm and Mercantile Bank of Jefferson County provides no basis to contradict King's trial testimony that the insurance checks were mailed. Therefore, counsel was not ineffective for failing to impeach agent King's testimony.

Maksimov also alleges that his counsel was ineffective for failing to object to the government's presentation of King's perjured testimony at trial. As noted above, Maksimov offers no

evidence supporting his claim that King's testimony was perjurious.

Maksimov's next contention, that the government shifted the burden of proof to the defense in its closing argument, is also without merit. The government merely argued that it was illogical for Maksimov to have shipped the vehicles to Russia and then back to the United States after having purchased other vehicles that he shipped overseas. This argument did not shift the burden of proof to Maksimov, and defense counsel was not ineffective for failing to object to it.

**(c) Failure to object to the jury instructions and move for a mistrial upon defendant being found guilty on the wrong count**

Maksimov alleges that the jury instructions were incorrect, and, as a result, he was found guilty of a count which had been dismissed, Count 3, and did not receive a verdict on dismissed Count 8. He contends that counsel was ineffective for failing to object to the jury instructions and move for a mistrial upon the defendant being found guilty on the wrong count. In <u>United States v. Frank</u>, 2005 WL 1683489 (N.D. Iowa 2005)(unpublished opinion), the court held that a criminal defendant who was convicted of the wrong count number but of the correct underlying criminal offense had not suffered prejudice worthy of § 2255 relief because no actual difference in the defendant's sentence would have resulted had the correct count number been listed.

Similarly, shortly before the commencement of Maksimov's trial, this Court granted the government's motion to dismiss four counts

of the indictment.  Before the case was submitted to the jury, the Court renumbered the counts so that the counts which the jury would have to decide would be in consecutive order.  The jurors were instructed, both orally and in writing, as to the charges they were to consider.  The written instructions that the jury had during deliberations contained a summary of each of the charges that remained after the dismissal of the four counts.  The jurors were never informed of nor instructed on the dismissed counts.  Thus, there could have been no juror confusion about the counts that were actually submitted and on which the verdicts were rendered.  Consequently, there is no basis for Maksimov's claim that he was found guilty on a dismissed count and, as the same verdicts would have been made regardless of the renumbering of the counts, there is no prejudice.

### (d) Failure to argue legal impossibility for the offense of bank fraud

Maksimov alleges that his counsel was ineffective for failing to argue that it was legally impossible for him to have committed the crime of bank fraud because his intent was not to defraud a financial institution but was, instead, to defraud insurance companies.[6]  He further argues that the banks suffered no loss, as

_____

[6] 18 U.S.C. §1344 states:

Whoever knowingly executes, or attempts to execute a scheme or artifice -- (1) to defraud a financial institution or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial

they were compensated by the insurance companies.

The Eighth Circuit has ruled that the government need not prove that a defrauded bank suffered a financial loss to show that a defendant committed bank fraud under 18 U.S.C. § 1344. <u>United States v. Ponec</u>, 163 F.3d 486, 488 (8th Cir. 1998). Paragraph (1) of the statute simply prohibits "defraud[ing] a financial institution . . . ." <u>Id</u>. Paragraph (1) says nothing about an actual or intended loss to the financial institution. Therefore, so long as a defendant has "defraud[ed]" a financial institution, that defendant has violated the statute, whether or not a loss has occurred. <u>Id</u>.

Maksimov's argument that he did not commit bank fraud because he did not directly defraud a financial institution contradicted by the evidence. Maksimov's bank fraud scheme involved obtaining loans from financial institutions to purchase vehicles. Maksimov would then obtain insurance policies covering each vehicle. After reporting to the insurance companies that the vehicles had been stolen, Maksimov would use the monies received from the insurance policies to pay off the loans obtained from the financial institutions. The evidence established that Maksimov did not intend to repay the financial institutions except through the proceeds he illegally obtained from the insurance companies. Thus, the evidence

---

institution, by means of false or fraudulent pretenses, representations, or premises shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

established that Maksimov intended to defraud both the financial institutions and the insurance companies.

It is not a defense to bank fraud that Maksimov intended to repay the financial institutions with the money he sought to illegally obtain from the insurance companies. Counsel was not ineffective for not asserting this frivolous defense.

### (e) Failure to file a post-verdict motion for judgment of acquittal

Maksimov asserts that his counsel should have filed a motion for judgment of acquittal, because the jury returned a guilty verdict on dismissed Count 3 of the Indictment and failed to return a verdict on Count 8 of the Indictment.

As discussed above, the Court renumbered the Counts of the Indictment so that the Counts which the jury would have to decided would be in consecutive order.  The original Count 3 was dismissed prior to trial and Count 4 of the indictment, charging mail fraud, was thereafter renumbered as Count 3.  Count 8 of the Indictment, bank fraud, was renumbered as Count 6.  The jury found Maksimov guilty on the renumbered counts.  The Court's instructions as to the all six counts were clear and fully explained to the jury, both orally and in writing.

Defense counsel twice moved for judgment of acquittal, both at the close of the government's case-in-chief and at the close of all the evidence.  Both motions were overruled.  Counsel states in her affidavit that she did not file a post-verdict motion for judgment

of acquittal because there was nothing that she could have argued in such a motion that had not been previously asserted in the previous motions. (Good Affidavit, ¶21). Therefore, counsel was not ineffective for failing to file an additional motion after denial of the two previous motions, which together contained all possible arguments for a judgment of acquittal.

### (g) Failure to object to the use of evidence obtained from the defendant's proffer

Maksimov alleges that his counsel was ineffective for failing to object to the Government's use of a Customs database search to prove that he did not bring the vehicles described in the indictment back to the United States, because such evidence was derived from the defendant's proffer and thereby violated the terms of the proffer agreement and his Fifth Amendment rights.

In United States v. McFarlane, 309 F.3d 510 (8th Cir. 2002), the Eighth Circuit held that when a defendant enters into an informal immunity agreement with the government rather than asserting his Fifth Amendment privilege against self-incrimination, the scope of the immunity agreement is governed by its terms.[7]

---

[7] The Eighth Circuit described the nature of informal immunity agreements as follows:

> The government gains information with which to prosecute other criminals, and the defendant receives the government's promise not to use the information against the defendant, depending upon the specifics of the particular agreement. In entering the agreement, however, the defendant essentially gives up his right to later assert his Fifth Amendment privilege not to incriminate himself within the context of the testimony he agrees to provide, or face the consequence of breaching the immunity agreement.

McFarlane, 309 F.3d at 513-14.

See United States v. Luloff, 15 F.3d 763, 766 (8th Cir. 1994) (holding that informal immunity agreements are "contractual in nature and are governed by ordinary standards of contract law"). Therefore, the terms of an unambiguous informal immunity agreement should be enforced. Luloff, 15 F.3d at 766.

Here, the terms of Maksimov's proffer agreement, an informal immunity agreement with the government, were unambiguous and the government's use of a Customs database search was a permissive derivative use of the information obtained during the proffer. Paragraph 1 of the proffer agreement stated that the purpose of the proffer was to provide the government "with an opportunity to assess the value, extent, and truthfulness of Mr. Maksimov's information about the *criminal liability of himself and others*." Proffer Agreement ¶1 (April 5, 2001)(emphasis added). The proffer agreement precluded the direct use of information contained in Maksimov's proffer,[8] but paragraph 7 of the proffer agreement expressly authorized the government to "make derivative use of, and [ ] pursue investigative leads suggested by, any statements or information provided by Mr. Maksimov's proffer.[9] Id. at ¶7. Therefore, the

_____

[8] Paragraph five of the proffer agreement provided for "[n]o Direct Use: The Government agrees that statements or information contained in Mr. Maksimov's proffer may not be used in the Government's case-in-chief against Mr. Maksimov should a trial be held." (Maksimov proffer agreement ¶5)(April 5, 2001).

[9] Paragraph seven of the proffer agreement provided:

Derivative Use: The Government may make derivative use of, and may pursue investigative leads suggested by, any statements or

government was prohibited from directly using the statements and information of Maksimov's proffer against him but was entitled to use evidence derived from Maksimov's proffer statements against him and others. See United States v. Pielago, 135 F.3d 703, 710 (11th Cir. 1998) (stating that a proffer's "derivative use" paragraph should be read as qualifying, instead of contradicting, the paragraph of the proffer agreement prohibiting the "direct use" of statements and  information obtained in a proffer).

The government did not violate the proffer agreement by using the results of a Customs database search as evidence at trial. The search was derivative of an investigative lead that was suggested by Maksimov during his proffer and was within the scope of the proffer agreement. Counsel was therefore not ineffective for failing to object to the government's use of the Customs database search at trial. Additionally, Maksimov fails to show that there is a reasonable probability that had counsel objected to the use of the evidence that the Court would have sustained such objection and refused to admit the evidence at trial.

### (h) Failure to object to the to the Customs database search

---

information provided by Mr. Maksimov's proffer.  This provision is necessary to eliminate the necessity for a Kastigar hearing wherein the Government would have to prove that the evidence it sought to introduce at trial or in a related legal proceeding is derived from 'a legitimate source wholly independent' of statements or information from the proffer.
(Maksimov proffer agreement ¶7)(April 5, 2001)(internal citations omitted).

Maksimov alleges that his counsel was ineffective for failing to object to the Customs database search which the Government used to show that neither Maksimov, nor his corporation, AIM International, Inc., imported the vehicles listed in the indictment into the United States. Specifically, Maksimov contends that counsel should have objected to the Government's inadequate foundation for the admission of this public record into evidence and therefore the Customs database search was inadmissible hearsay.

In relevant part, Federal Rule of Evidence 803(8), the public records exception, provides that the following evidence is not excluded by the hearsay rule:

> Records, reports, statements, or data complications, in any form, of public offices or agencies, setting forth . . . (B) matters observed pursuant to duty imposed by law as to which matters where was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel . . .

Fed. R. Evid. 803(8)(B).

Maksimov's argument regarding the foundational requirements for the admissibility of the Customs database search document is misplaced because such foundational requirements relate to the admissibility of a business record, pursuant to Fed. R. Evid. 803(6), and not to the admissibility of public records, pursuant to Fed. R. Evid. 803(8), or to the absence of public records, pursuant to Fed. R. Evid. 803(10), through which the government offered the evidence.

The difference between the foundational requirements of the business records exception and the public records exception to the

hearsay rule is that 803(6) requires the "testimony of the custodian or other qualified witness," while 803(8) does not require any foundational testimony. <u>United States v. Regner</u>, 677 F.2d 754, 761 (9th Cir. 1982)(internal citations omitted); <u>see</u> <u>Washington Central Railroad Co. v. National Mediation Board</u>, 830 F.Supp. 1343, 1354 (E.D. Wa. 1993)(stating "whereas the business records foundation includes the testimony of the custodian as to when the record was made, the personal knowledge of the maker, and the course of business as to the making and keeping records, the public records exception only requires that the record be those of a government agency that include factual findings resulting from investigations made pursuant to lawful authority"). Therefore, foundational testimony as to the personal knowledge of the maker of the Customs database search and the course of business as to the making and recording of the Customs data search was not required by the public records exception in Fed. R. Evid. 803(8)(B).

Additionally, under Fed. R. Evid. 803(10), the absence of a public record to prove the "the absence of a record . . . or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency," is admissible at trial if evidence in the form of "a certification in accordance with rule 902, *or testimony*" can demonstrate that a "diligent search failed to disclose the record, report, statement, or data compilation, or entry." Fed. R. Evid. 803(10) (emphasis added).

In <u>United States v. Hale</u>, 978 F.2d 1016 (8th Cir. 1992), the court held that the government's use of a firearms registration record to prove that the defendant had not registered their firearm was admissible hearsay under the "negative records" rule because the government introduced two affidavits by specialists from the Bureau of Alcohol, Tobacco, and Firearms, stating that after a diligent search of firearms registrations records, no record was located that showed any application by the defendant to register his weapon. <u>Id</u>. at 1017-20. Additionally, the court stated that evidence of the non-existence of public records does not violate the Confrontation of Clause of the Sixth Amendment. <u>Id</u>. at 1021.

Here, similar to the affidavits offered in <u>Hale</u>, the government presented the testimony of Agent Siebenberger to demonstrate that a diligent search of the Customs database failed to disclose the existence of an entry indicating that Maksimov had imported vehicles into the United States. Siebenberger requested that the United States Customs Service search its Automated Customs database records as to whether Maksimov or his corporation had imported any vehicles into the United States. He also testified that it was the general practice of the Customs Service to input into its computers information relating to importers at the time that the goods are imported into the United States, and that the Customs Service's computer system is able to reflect what has been imported in an accurate manner.

The Court finds that counsel was not ineffective for failing

to object to the admission of the Customs database report, because the public records exception of Fed. R. Evid. 803(8) does not require any foundational testimony and the government adequately demonstrated, through Agent Siebenberger's testimony, that the Customs Service performed a diligent search of the Customs database thereby warranting the admission of the negative public record.

### 3. Ineffective Assistance of Counsel During Sentencing

#### (a) Failure to object to the fact that the money laundering and fraud counts were not grouped

Maksimov contends that his attorney should have objected to the failure to group the money laundering and fraud charges for purposes of determining his offense level. Had the objection been made and overruled, Maksimov argues that he could have appealed the issue and taken advantage of a November 2001 amendment to the Sentencing Guidelines that mandated the grouping of fraud and money laundering charges.

The 2000 edition of the Sentencing Guidelines Manual was used in determining Maksimov's sentence. Maksimov's total offense level was calculated based on U.S.S.G. § 2F1.1, after grouping the mail and bank fraud charges, and on U.S.S.G. § 2S1.1, pertaining to the money laundering. At the time he was sentenced, the law in the Eighth Circuit did not allow for fraud and money laundering charges to be grouped together. United States v. Hildebrand, 152 F.3d 756, 763 (8th Cir. 1998)(holding that fraud and money laundering counts

are not so closely related as to permit grouping under U.S.S.G. §3D1.2(d) because the two counts do not measure the same types of harm and the base offense level for money laundering was much more than the base offense level for fraud); United States v. O'Kane, 155 F.3d 969, 971-74 (8th Cir. 1998) (holding that fraud and money laundering counts cannot be grouped under U.S.S.C. §3D1.2(b) because those crimes have different victims); see also United States v. Green, 2254 F.3d 955, 959 (8th Cir. 2000) (expanding O'Kane's separation of fraud and money laundering to all types of money laundering).

After Maksimov was sentenced, Amendment 634 was adopted and became effective on November 1, 2001.  The amendment effected a change in the calculation of the offense level for money laundering under U.S.S.G. § 2S1.1.  According to the application note following the amendment, grouping of a money laundering count with the count for the underlying charge became required.

Counsel's failure to make challenge the omission of the money laundering count from the grouping of the fraud counts does not establish ineffective assistance.  At the time of Maksimov's sentencing, such grouping was not allowed under Eighth Circuit law.  Thus, counsel cannot be faulted for making an objection that would have been contrary to existing law.  Also, Maksimov was to be sentenced under the guidelines that were then in effect, not based on any amendment that subsequently occurred.  To fairly assess counsel's performance, "every effort must be made to eliminate the

distorting effects of hindsight." <u>Strickland</u>, 466 U.S. at 689.
Here, defense counsel could not have predicted the change in the
law, and cannot be faulted for failing to do so.

### (b) Failure to object to two-level increase for organizer or leader

Maksimov alleges that his counsel was ineffective for failing
to object the two-level increase of his offense level based on the
finding that he was an organizer or leader.  Maksimov contends that
the offense level for his money laundering conviction under Count
4 of the renumbered indictment should not have been increased by two
levels for being organizer or leader because there was no evidence
that he supervised anyone while committing money laundering.

The Introductory Commentary to U.S.S.G. Chapter 3, Part B
provides:

> This Part provides adjustments to the offense level based
> upon the role the defendant played in committing the
> offense.  The determination of a defendant's role in the
> offense is to be made on the basis of all conduct within
> the scope of §1B1.3 (Relevant Conduct), <u>i.e.</u>, all conduct
> included under §1B1.3(a)(1)-(4), and not solely on the
> basis of elements and acts cited in the count of
> conviction.

The Eighth Circuit has followed the Introductory Commentary to
the Guidelines in holding that adjustments under Chapter 3, Part B
for the defendant's role in the offense should be based on all
relevant conduct and not merely on the elements of the offense
charged.  <u>United States v. Rosnow</u>, 9 F.3d 728, 730-31 (8th Cir.
1993); <u>United States v. Westerman</u>, 973 F.2d 1422, 1427 (8th Cir.
1992).  Therefore, § 3B1.1 allows the sentencing judge to "look to

the contours of the underlying scheme itself rather than the mere elements of the offense charged." Rosnow, 9 F.3d at 730 (internal citations omitted); see United States v. Rodriguez, 925 F.2d 107, 111 (5th Cir. 1991)(quoting United States v. Mir, 919 F.2d 940, 945 (5th Cir. 1990)("the sentencing court, in making it an adjustment under § 3B1.1, may consider all conduct linked to the transaction, even if it falls outside the four corners of the conviction itself").

Here, the adjustment to Maksimov's offense level for the role he played in the money laundering offense was based on all the relevant conduct before the court, *i.e.*, his conduct in the transactions leading to money laundering conviction, and not merely on the offense of the conviction. The basis of Maksimov's money laundering conviction under Count 4 of the renumbered indictment was his use of the money he received from one act of mail fraud to commit another act of mail fraud. Maksimov was convicted of money laundering under 18 U.S.C. §1956(a)(1)(A)(I), which prohibits financial transactions involving the proceeds of "specified unlawful activity" intended to promote the carrying out of "specified unlawful activity".[10]

In 1995, Maksimov filed a false insurance claim with State Farm by stating that a 1992 Ford Explorer had been stolen at Six Flags.

_____

[10] 18 U.S.C. §1956(c)(7) defines a "specified unlawful activity" as "any act or activity constituting an offense listed in section 1961(1) of this title." 18 U.S.C. §1961(1) defines "racketeering activity" as any act relating to mail fraud.

State Farm paid off the lien on this vehicle and on June 6, 1995 mailed two checks to Maksimov for the balance due under his insurance policy. Maksimov deposited the two checks into his corporate bank account at Mercantile Bank of Jefferson Count on June 7, 1995. Maksimov then used these proceeds to ship a 1993 Chevrolet Blazer to Finland. Following a sham purchase of the Blazer from Maksimov, Andrey Shamilov obtained an insurance policy on the vehicle. Approximately four days later, Shamilov reported that the vehicle had been stolen. Although Shamilov reported the car stolen, it was Maksimov who undertook the efforts to recover on that claim. Count 3 of the renumbered indictment, which charged mail fraud, was based upon Maksimov's attempt to recover the proceeds of the insurance policy on the Blazer. This act of mail fraud was the "specified unlawful activity" which was promoted by Maksimov's use of the proceeds of a previous mail fraud. Maksimov's recruitment of Shamilov, who reported the Blazer stolen, was part of the money laundering offense because Shamilov participated in the act of mail fraud that was promoted by Maksimov's use of the proceeds of a previous mail fraud.

Maksimov was not prejudiced by his counsel's failure to object to the two-level increase for organizer or leader to the money laundering count. Had the objection been made, it would have been overruled because Maksimov's adjustment for role was based on all the relevant conduct (*i.e.*, Makismov's recruitment of Shamilov in the mail fraud count and his involvement in all the other

transactions leading to his conviction) and not just the count of conviction.

### (c) Failure to object to identification evidence at sentencing

Maksimov alleges that his counsel was ineffective for failing to object, on the basis of hearsay, to the testimony of Customs Agent Thomas King concerning the photo spread identifications of Maksimov made by an employee of the Elco Chevrolet dealership where Maksimov purchased one of the four vehicles and by a real estate agent who had previously been involved with Maksimov in the purchase and resale of different residences.

Generally, hearsay is admissible at a sentencing hearing so long as it bears some indicia of reliability. United States v. Wallace, 408 F.3d 1046, 1048 (8th Cir. 2005) (citing United States v. Shevi, 345 F.3d 675, 679 (8th Cir. 2003), cert. denied, 540 U.S. 1166 (2004)). Additionally, the Confrontation Clause does not apply in sentencing proceedings so long as the out-of-court information relevant to the circumstances of the crime bear some indicia of reliability. Id.

Here, the defense cross-examined Agent King's testimony at sentencing and had the opportunity to rebut the photo spread identifications of Maksimov. Agent King's testimony was sufficiently reliable, and Maksimov was not prejudiced by the admission of the out-of-court identification evidence presented at sentencing.

### (d) Failure to bring newly discovered evidence
### to sentencing and to move for new trial

Maksimov alleges that his counsel was ineffective for failing to move for a new trial on the basis of newly discovered evidence. A defendant seeking a new trial based on newly discovered evidence must show that the evidence is in fact new, that his failure to discover it earlier was not due to lack of diligence, and that the evidence is such that a new trial  it would likely produce a different outcome.  United States v. Smith, 63 F.3d 1073, 1078 (8th Cir. 1995)(citing United States v. LaFuente, 991 F.2d 1406, 1408 (8th Cir. 1993)).  Maksimov contends that three pieces of evidence warranted a motion for a new trial because the evidence would have led to a different result if it had been available at trial.

First, as previously noted, it is unlikely that Andrey Shamilov, who Maksimov claims to have seen one of vehicles in question on the day of its theft, would have provided exculpatory evidence for Maksimov because of the risk of self-incrimination that his testimony would have entailed.  At trial, the Court ruled that Maksimov and Shamilov were co-conspirators for the purpose of admitting Shamilov's hearsay statements into evidence. Additionally, as set forth in counsel's affidavit, Shamilov was unable to provide any exculpatory evidence that would have constituted the basis for a new trial.

Second, Vilena Poluyanova's testimony would not have produced a different result because she told counsel, contrary to Maksimov's

assertion, that she had not seen the vehicle that Maksimov claimed was stolen from the Diamond Cabaret in Sauget, Illinois. (Good Affidavit, ¶13). Third, counsel determined that the documents she received from Russia after Maksimov's trial could not be authenticated and identified as business records, as required by Fed. R. Evid. 803(6) and 901(1), and therefore could not adequately provide the basis for a new trial. Thus, Maksimov was not prejudiced by his counsel's failure to move for a new trial on the basis of newly discovered evidence because none of the evidence that Maksimov asserted would have likely produced a different outcome at trial.

### 4. Ineffective Assistance on Direct Appeal

#### (a) Failure to argue the issues which the defendant wanted to argue on appeal

Maksimov alleges that his counsel was ineffective for failing to challenging on appeal the sufficiency of the evidence, the two-level increase in his offense level based on his status as an organizer or leader, and the lack of an interpreter at trial.

Under Strickland, a reviewing court's scrutiny of counsel's performance is deferential and, when determining whether an attorney provided reasonable assistance to its client, the reviewing court should minimize the effects of hindsight and recognize a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. In light of this presumption, the right to effective

assistance of counsel on direct appeal does not require that appellate counsel raise every colorable or non-frivolous issue on appeal. Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Anderson v. United States, 393 F.3d 749, 754 (8th Cir. 2005). Absent contrary evidence, courts assume that an appellate attorney's failure to raise a claim is an exercise of sound appellate strategy. Sidebottom v. Delo, 46 F.3d 744, 759 (8th Cir.), cert. denied, 516 U.S. 849 (1995); see Smith v. Murray, 477 U.S. 527, 536 (1986)("the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy")(internal citations omitted). Therefore, in assessing counsel's effectiveness, the question is whether the decision to omit an issue on appeal was unreasonable under the circumstances and was decision that only an incompetent attorney would make. Anderson, 393 F.3d at 754 (citing Garrett v. United States, 78 F.3d 1296, 1305 (8th Cir. 1996)).

Maksimov first contends that his counsel should have argued that the evidence was insufficient to find him guilty because the evidence was equally suggestive of guilt and innocence. Jury verdicts are not overturned lightly. United States v. Baker, 98 F.3d 330, 338 (8th Cir. 1996). The jury's verdict must be upheld when the evidence raises an equal inference of guilt or innocence. Id.; United States v. Thompson, 285 F.3d 731, 734 (8th Cir. 2002). A guilty verdict should be reversed for insufficient evidence "only

if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Henderson-Durand, 985 F.2d 970, 975 (8th Cir. 1993) (citing United States v. Young-Bey, 893 F.2d 178, 181 (8th Cir. 1990)); Baker, 98 F.3d at 338 ("[i]n reviewing the sufficiency of evidence on appeal, the court views the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict").   Thus, Maksimov's assertion that there was an alternative construction of the evidence would have been rejected on appeal as this theory has been expressly rejected by the Eighth Circuit.

With respect to Maksimov's second argument, an increase in a defendant's offense level based on his role in the offense, pursuant to U.S.S.C. §3B1.1, is to be determined on the basis of all relevant conduct and not solely on the basis of acts cited in the count of conviction.  United States v. Rosnow, 9 F.3d 728, 730-31 (8th Cir. 1993); United States v. Westerman, 973 F.2d 1422, 1427 (8th Cir. 1992).  Maksimov's mail fraud conviction in which Maksimov directed Shamilov was "relevant conduct" with respect to the two-level increase for his role in the money laundering count.   Therefore, counsel's failure to challenge the two-level increase was not prejudicial as such a challenge would not have been successful on appeal.

Finally, Maksimov contends that his counsel should have argued

on appeal that the Court erred in refusing to provide him an interpreter at trial and sentencing. A decision to deny an interpreter is reviewed on an abuse of discretion standard. <u>United States v. Coronel-Quintana</u>, 752 F.2d 1284, 1291 (8th Cir.), <u>cert. denied</u>, 474 U.S. 819 (1985); <u>United States v. Khehra</u>, 396 F.3d 1027, 1030 (8th Cir. 2005). Because the decision to provide an interpreter is dependent upon a variety of factors, the trial court, being in direct contact with the defendant, is given wide discretion and its determination will not be overturned unless the trial court clearly abuses its discretion. <u>Id</u>.

During his trial, Maksimov's pro se motion for an interpreter was denied because the record indicated that Maskimov had lived in the United States for at least 10 years, he was a naturalized United States citizen, and that he spoke fluent English. Additionally, the Court found that Maksimov had operated his own business and had participated in several court proceedings without expressing any difficulty in understanding the English language. Therefore, Maksimov was not prejudiced by his counsel's decision not to argue this issue on appeal because the record indicates that such an argument would have been unsuccessful.

### (b) Failure to challenge denial of motion for new counsel

Maksimov alleges that his counsel should have argued on appeal that the district court erred in not granting his motion to replace counsel. "Appointment of new counsel is warranted only when the

defendant demonstrates justifiable dissatisfaction with his appointed counsel." United States v. Barrow, 287 F.3d 733, 738 (8th Cir. 2002). A district court's decision as to whether to appoint new counsel for a defendant is reviewed under an abuse of discretion standard. Id.

In Barrow, the Eighth Circuit commented that last-minute requests to substitute defense counsel are not favored and that justifiable dissatisfaction with counsel does not include frustration with an attorney who does not share the defendant's tactical opinions but continues to provide zealous representation. Id. at 738 (citing United States v. Swinney, 970 F.2d 494, 499 (8th Cir. 1992)). Here, ten days before the start of his trial, Maksimov filed a motion for appointment of new counsel. The motion was denied because the disagreement between Maksimov and his counsel with respect to Maksimov's decision to proceed to trial had not caused their relationship to deteriorate to the point of an irreconcilable conflict or a complete breakdown in communication. Additionally, a review of the record indicates that Maksimov's counsel continued to zealously and diligently represent Maksimov throughout the appellate process.

Maksimov has not shown how the refusal to appoint him a new attorney was an abuse of discretion and has not demonstrated how his counsel's failure to argue that issue on appeal prejudiced his defense.

## (c) Failure to file a reply brief

In the opening brief on appeal, defense counsel asserted that the Court erred in refusing to declare a mistrial based on the alleged inattentiveness of jurors. The government responded in its that the decision to remove a juror is vested to the discretion of the district court. The government also argued in its brief that the Court acted within its discretion when it dismissed one juror who was observed to be sleeping during trial, but did not dismiss other jurors or declare a mistrial. The Eighth Circuit upheld the decision to remove the one juror and to deny the motion for mistrial. <u>United States v. Maksimov</u>, 39 Fed.Appx. 462, 463 (8th Cir. 2002).

Maksimov contends that his counsel was ineffective for failing to file a reply brief to argue the mistrial issue further. However, he fails to demonstrate how the result of his appeal would have been different had a reply brief been filed. Specifically, Maksimov fails to articulate what his counsel should have included in a reply brief that was not included in the opening brief or how any new argument would have brought about a different result.

### III.  <u>Motion for New Trial under Rule 33</u>

Rule 33(b)(1) of the Federal Rules of Criminal Procedure provides that a motion for a new trial based upon newly discovered evidence must be filed within three years of the verdict. The jury returned its verdicts in this case on May 18, 2001. Because Maksimov's Rule 33 motion, which is based on newly discovered

evidence, was not filed until May 24, 2004, it is untimely.  As

such, the Court lacks jurisdiction to consider the motion.  <u>See</u>

<u>United States v. Erwin</u>, 277 F.3d 727, 732 (5th Cir. 2001).  <u>See</u>

<u>also</u>, <u>United States v. Spector</u>, 888 F.2d 583, 584 (8th Cir. 1989).

Motions for a new trial based upon newly discovered evidence

are generally disfavored by courts.  <u>United States v. Jones</u>, 34 F.3d

596, 600 (8th Cir. 1994).  To justify the grant of a new trial based

on newly discovered evidence, the movant must establish that: (1)

the evidence was discovered after trial; (2) the failure to discover

the evidence sooner is not attributable to a lack of due diligence

on the part of the movant; (3) evidence is not merely cumulative or

impeaching; (4) the evidence is material; and (5) the evidence is

likely to produce an acquittal if a new trial is granted.  <u>United</u>

<u>States v. Duke</u>, 255 F.3d 656, 659 (8th Cir. 2001).

Here, even if the Maksimov's motion had been timely filed, he

would not be entitled to relief.  The affidavits attached to his

motion were not discovered after trial[11], the affidavits were

attributable to Maksimov's lack of due diligence[12] and because the

---

[11] Evidence cannot be considered "newly discovered" for purposes of
granting a new trial where the defendant was aware of the evidence before
trial.  <u>United States v. Vazquez-Garcia</u>, 340 F.3d 632, 640-41 (8th Cir. 2003).
Here, Maksimov's assertion that the affidavits were "not available" at trial
are unsupported by facts showing why this information was allegedly
unavailable.  From review of the record, it is apparent that Maksimov had to
have known the affiants personally before trial and that the information
should therefore have been available at trial.

[12] In Maksimov's §2255 motion, he alleges that his trial counsel was
ineffective for failing to contact the two affiants whose affidavits now
provide the basis for his motion pursuant to Rule 33.  As previously stated,
Maksimov failed to provide counsel with adequate means to contact the

-46-

information as set forth in the affidavits would not likely produce an acquittal at a new trial.[13]  Therefore, the motion does not satisfy the evidentiary requirements necessary for granting a new trial under Rule 33.

Maksimov brought his Rule 33 motion in the proceedings to vacate his sentence under 28 U.S.C. § 2255.  The Court agrees with the government that the Rule 33 motion should have been filed in the criminal case.  However, Maksimov's failure to do so is an administrative error, not a substantive one.  Therefore, the government's motion to transfer will be denied as moot.

---

witnesses and therefore, it was Makismov's lack of due diligence that resulted in his counsel's failure to locate and procure the witnesses.  It is this same lack of due diligence that bars Makismov's Rule 33 motion.

[13] The jury's verdicts were based on the testimony and documentary evidence that tracked each vehicle that Maksimov had purchased, financed, insured, exported, and claimed to have been stolen.  If the "new evidence" procured is not credible on its face, it is unlikely to produce an acquittal at a new trial.  The lack of credibility of the "new evidence" is sufficient grounds for denying the motion for a new trial.  United States v. Vazquez-Garcia, 340 F.3d 349, 351 (8th Cir. 2003).  The two affidavits procured by Maksimov are inadequate to produce an acquittal at a new trial.  Nedochivine's affidavit merely provides at best, a generalized familiarity to the vehicles that Maksimov allegedly shipped back to the United States.  Nedochivine states that he Maksimov shipped "some vehicles" to the United States, but he does not list or describe these vehicles.  Nedochivine's unfamiliarity as to the vehicles sent to the United States is supported by his statement that he has "no further personal knowledge of happened to these vehicles."  Although Goriunov's affidavit provides more specificity regarding the shipment of vehicles from Russia to the United States, the affidavit fails to clearly establish that the particular vehicles that the government proved were shipped overseas had been returned to the United States before Maksimov claimed that they were stolen.  Goriunov's affidavit states that his responsibilities in helping Maksimov ship the vehicles ended after he "deliver[ed] the vehicles to the shipping company and [had] complete[d] [the] shipping documents."  However, Maksimov has not shown why the shipping documents, which reflect the purported return of the four vehicles to the United States and which Goriunov claims he "passed to" Maksimov were not available to him at trial to corroborate the truthfulness of Goriunov's affidavit.

### III. **Conclusion**

For the foregoing reasons, the Court concludes that Maksimov is not entitled to relief on the claims he asserts in his motions.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Aleksandr Maksimov to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 [#1] is **denied.** The Court finds that movant has not made a substantial showing of the denial of a constitutional right and, therefore, the Court will not issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2).

**IT IS FURTHER ORDERED** that the motion of Aleksandr Maksimov to vacate the judgment and to grant a new trial under Rule 33 of the Federal Rules of Criminal Procedure [#31] is **denied.**

**IT IS FURTHER ORDERED** that the motion of the United States to transfer [#33] is **denied as moot.**


_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 25th day of September, 2006.